(78 Misc. Rep. 165.)

### TULLY v. NEW YORK TIMES CO.

(Supreme Court, Appellate Term, First Department. November 8, 1912.)

1. PLEADING (§ 129*)—ADMISSIONS.

Under Code Civ. Proc. § 522, providing that each material allegation of the complaint, not controverted by the answer, will be taken as true, the answer in libel, by not denying publication, admitted it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 270–275; Dec. Dig. § 129.*]

2. PLEADING (§ 94*)—ANSWER—SEPARATE DEFENSES.

Each separate defense should be tested by its own allegations.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 191, 192; Dec. Dig. § 94.*]

3. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—SUFFICIENCY.

Where the alleged libel was the making of a statement that plaintiff swore that her father was dead, but that the father appeared in court at the time, and that plaintiff knew throughout the trial that he was living, a justification, showing that plaintiff swore that her father was dead merely on information and belief, and that she knew that he was then living, was as broad as the alleged libel, and sufficient.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 219–225; Dec. Dig. § 94.*]

4. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—SUFFICIENCY.

A justification in libel must be as broad as the libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 219–225; Dec. Dig. § 94.*]

Appeal from City Court of New York, Special Term.

Action by Mary Tully against the New York Times Company. From an interlocutory judgment, sustaining a demurrer to a part of the answer, defendant appeals. Reversed, and demurrer overruled.

Argued October term, 1912, before SEABURY, GUY, and BIJUR, JJ.

Leventritt, Cook & Nathan, of New York City (Alfred A. Cook, of New York City, of counsel), for appellant.

William F. Unger, of New York City, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GUY, J. Plaintiff sues to recover damages for libel consisting in the publication of the following article in defendant's daily newspaper:

"Ghost Halts a $50,000 Suit. But John Tully Proves to be a Reality After All to His Daughters."

"A suit for $50,000 against the City of New York was put on trial yesterday before Justice Dugro and a jury in the Supreme Court. The plaintiffs in the case were three sisters of the dead man, Catherine, Mary and Julia Tully. In order to bring the suit they had sworn that their parents were dead and took letters of administration for their brother's estate. A rough pavement pitched Tully off a truck and killed him. Catherine was on the stand when the policeman attached to the Corporation Counsel's office brought a man into the court room. As soon as the witness saw him she began to scream. In a moment the two other sisters were also screaming. The man the Corporation Counsel had brought into court was John Tully, the father of the three girls. As soon as they recovered from their hysteria they explained that they had not seen him for nine years, and thought he was dead. They added that they screamed because they thought a ghost had come to court. Tully insisted that, though he had been separated from his family, the girls knew throughout the proceedings that he was alive and where he could be found. Justice Dugro suspended the trial and will make inquiry into the circumstances of the case to-day."

The first separate defense is justification; the second, privilege. It is alleged in the first defense that on April 15, 1911, letters of administration on the estate of the deceased brother of the plaintiff were granted to his mother; that she, as his administratrix, brought an action to recover damages for his death; that on October 6, 1911, she died, and plaintiff was appointed administratrix de bonis non of her brother's estate on November 3, 1911, and continued the action brought by her mother. The plaintiff, in order to obtain said letters of administration de bonis non, alleged in her petition as follows:

"And your petitioner has been informed and believes that the deceased left him surviving said Julia A. Tully, his mother, who has since died, as above stated; Ellen Reilly, his sister; your petitioner, Mary A. Tully; John Tully, a brother; Eugene Tully, a brother; Joseph Tully, a brother; and Catherine Tully, a sister—*as his only next of kin.*"

Plaintiff demurred to this defense as insufficient in law, and the demurrer was sustained. Her contentions are: First, that a defense of justification must admit the publication, and that nowhere in said first separate defense is such admission to be found.

[1, 2] Under section 522 of the Code each material allegation of the complaint not controverted by the answer is to be taken as true. It is elementary that each separate defense is to be tested alone, and therefore, by not denying, it admits, publication.

[3, 4] Plaintiff's second objection to the defense is that the justification is not as broad as the libel, inasmuch as the alleged libel charges plaintiff with having *sworn*, in substance, that her father was dead, and the facts pleaded in justification show that she made such oath only on information and belief. The rule, however, is that the justification must be as broad as the libel, not that it must be as broad as all the immaterial and irrelevant facts alleged in the libel.

The alleged libel consists in the statement that plaintiff swore that her father was dead, while the father, appearing in court, stated that the plaintiff "knew throughout the proceedings that he was living." If she knew that he was living, it is quite immaterial whether she swore unqualifiedly that he was dead, or swore to the same fact on information and belief. Bennett v. Leeds Mfg. Co., 110 N. Y. 150, 17 N. E. 669.

The defense of justification, however, does not rest solely upon the allegations set forth in the first defense as to what actually transpired in court, but alleges other facts, including an alleged letter written by plaintiff, at or about the time of swearing to the petition in question, showing actual knowledge at that time that her father was living. We think, therefore, that the defense of justification as alleged is sufficient.

For the same reasons, the defense of privilege, as set forth in the second separate defense, is sufficient.

The interlocutory judgment, sustaining the demurrers, must be reversed, with costs, and the demurrer overruled, with costs.

BIJUR, J., concurs. SEABURY, J., concurs in result.

